IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| ERIC CLEMMONS, | ) | |
| Register No. 99956, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-4033-CV-C-SOW |
| | ) | |
| BILL ARMONTROUT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, an inmate confined in a Missouri penal institution, commenced this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the jurisdictional statute, 28 U.S.C. § 1343.

In support of his claims for relief, plaintiff states he was deprived of his liberty interest in a fair trial due to defendant George Brooks' intentional or reckless failure to disclose or investigate exculpatory leads or exonerating information, which resulted in plaintiff being wrongly convicted for murder and on death row for fourteen years, and plaintiff seeks relief for the physical, emotional, and economic damages related thereto.

On August 9, 2005, defendant Estate of George Brooks filed a motion for summary judgment. Defendant argues that plaintiff can produces no admissible evidence creating a genuine dispute of material fact as to his claims against defendant and, thus, defendant is entitled to judgment as a matter of law as to plaintiff's 42 U.S.C. § 1983 due process claim and claim of malicious prosecution.

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material

fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op.*, 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. *Celotex*, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." *Hass v. Weiner*, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

### Statement of Facts

Plaintiff Eric Clemmons is an inmate in the custody of the Missouri Department of Corrections. Plaintiff was convicted of capital murder and assault in 1983, and was sentenced to life without the possibility of parole for fifty years.

Plaintiff's claims relate to the murder of inmate Henry Johnson on August 7, 1985, at Missouri State Penitentiary (MSP). Johnson was stabbed three times and later died from his injuries. Corrections Officer I Thomas Steigerwald, believed to have witnessed the stabbing, identified plaintiff Clemmons as the offender who stabbed inmate Johnson. At the time of the murder, Steigerwald called for assistance, and Capt. Gross, a corrections supervisor at MSP, responded to the call. Plaintiff was taken into custody by defendants Steigerwald and Gross. When placed in a holding cell after being taken into custody, plaintiff's sweatshirt and tennis shoes were noted as having bloodstains on them. After taking plaintiff into custody, defendant Gross returned to the scene of the stabbing and gave orders for corrections officers to search

for the assault weapon. No weapon was ever located. Gross thereafter continued to supervise a cursory investigation into the stabbing incident until an investigator arrived to command the investigation. While conducting such investigation, inmate Dwight Clark advised Gross that he had witnessed two men assaulting Johnson, and described both assailants as being black, and thought one was inmate Fred Bagby, but only knew the second inmate by sight. Gross, subsequently, on that same date, prepared an Inter-Office Communication (IOC) to George Brooks, the MSP investigator assigned to the murder investigation, which outlined Gross' investigation and his conversation with inmate Clark. The IOC from Gross notified investigator Brooks of Clark's statement, but qualified the information with a statement that "[w]hen questioned in detail Clark did not make sense and further investigation reflects that Clark's statement is untrue." The IOC indicates that defendants William Armontrout, Warden; Donald Cline, Deputy Warden; Robert Acree, Superintendent I; Major James Eberle and specified others were forwarded a copy of the IOC.

     Defendant Gross states in his deposition that he did not speak to, or search the cell of, Fred Bagby, but rather, checked the out-count list and determined that because Bagby was not listed, Clark's statement was not credible. Gross further states, however, that there would have been more than one out-count list and, thus, Bagby could have been listed on those separate out-counts, which he did not check, and/or that it is possible an inmate could be in the prison yard without being listed on the out-count.

     Investigator George Brooks stated in his deposition that he had no recollection of seeing the IOC from Gross, and that he did not follow up with inmates Clark or Bagby as a part of his investigation. When Brooks completed his investigation into the murder, he forwarded his investigation file to Warden Armontrout, who then forwarded it to the Cole County Prosecuting Attorney's Office for review. The file forwarded to the prosecuting attorney's office did not contain the IOC written by Capt. Gross regarding the statements made by inmate Clark, who claimed to be an eye-witness to Fred Bagby and another inmate stabbing Johnson.

3

Case 2:03-cv-04033-SOW   Document 155   Filed 11/17/05   Page 3 of 9

The Cole County Prosecuting Attorney charged plaintiff Clemmons with the murder of inmate Johnson. Plaintiff was convicted of the murder of inmate Johnson in 1987 and was sentenced to death.

In 1997, the United States Court of Appeals for the Eighth Circuit granted plaintiff's writ of habeas corpus, thereby vacating his conviction. *See Clemmons v. Delo*, 124 F.3d 944 (1997). The Court granted habeas, citing a constitutional violation in the failure to disclose exculpatory evidence (Gross' memorandum (IOC) regarding statements made by inmate Clark), and found that there was a reasonable probability that the verdict of the jury would have been different were it not for the violation of Clemmons' constitutional rights. The court went on to say that "[w]e cannot say with confidence that the jury would have reached the same verdict when presented with an eyewitness who accused a different inmate of the crime within an hour of the murder, the very same inmate that three other witnesses had also accused of the crime." *Id.* at 951. At trial, plaintiff presented three witnesses (fellow inmates) who identified Fred Bagby as the killer, but in each case, the witness had not come forward until Fred Bagby had died. The prosecution impeached the testimony of plaintiff's witnesses by arguing that Bagby was conveniently dead at the time they came forward. Without knowledge of the IOC written by Capt. Gross, plaintiff and his criminal defense counsel were not able to rehabilitate plaintiff's witnesses. At the time Clark had accused Bagby of the murder, Bagby was alive. Thus, Clark identifying Bagby as the killer an hour after the murder would have supported the testimony of plaintiff's three other witnesses. Moreover, Clark could have been called as a witness on Clemmons' behalf.

On February 18, 2000, a jury acquitted plaintiff Clemmons of the murder of inmate Johnson. On February 24, 2001, pursuant to grievances filed by Clemmons with the Department of Corrections, plaintiff's prison records were expunged of the murder of Johnson. Plaintiff filed his claim under 42 U.S.C. § 1983 on February 20, 2003.

**Discussion**

*Statute of Limitations and 42U.S.C. § 1983 Claims*

"[T]he length of the limitations period, and closely related questions of tolling and application, are to be governed by state law." *Wilson v. Garcia*, 471 U.S. 261, 266-68

4

(1985). In Missouri the applicable statute of limitations for a section 1983 claim is five years. *Sulik v. Taney* County, 393 F.3d 765, 767 (8th Cir. 2005) (citing *Wilson*, 471 U.S. at 276).

Plaintiff's claims challenging defendant's intentional or reckless failure to disclose or investigate exculpatory leads or exonerating information, resulting in plaintiff being wrongly convicted for murder, were not ripe for challenge until he was acquitted on February 18, 2000, and thus, the applicable five-year statute of limitations did not start to run until such time. Thus, plaintiff's filing of his claims with this court on February 20, 2003, was within the five years as provided by Missouri law and, thus, were timely filed.

*Statute of Limitations and State Law Claim of Malicious Prosecution*

In Missouri all actions brought by an offender against the department of corrections or any entity or division thereof, or any employee or former employee for an act in their official capacity, or by omission of an official duty shall be brought within one year, pursuant to V.A.M.S. § 516.145. Pursuant to V.A.M.S. § 516.140, a malicious prosecution tort claim must be brought within two years.

In Missouri, a claim of malicious prosecution accrues when the underlying proceeding is terminated in plaintiff's favor. *Linn v. Moffitt*, 73 S.W.3d 629, 633 (Mo. App. E.D. 2002) (citing *Arana v. Reed*, 793 S.W.2d 224, 226 (Mo. App. 1990)). The termination of a proceeding is effected by a final judgment on the merits, a dismissal, with prejudice, or abandonment of an action. *Id.*

In the instant case, plaintiff's acquittal of the criminal murder charges on February 18, 2000, is the date of termination of the proceedings and, thus, when the statute of limitations began to run as to plaintiff's malicious prosecution claim. *Id.* (date of termination of stealing claims was date plaintiff was acquitted of such charges). In applying either the one-year statute of limitations provided by section 516.145 for claims against defendant in his official capacity; or the two-year statute of limitations for any claims against defendant in his personal capacity; the court finds that plaintiff filed his complaint with this court on February 20, 2003, almost three years after his acquittal date of February 18, 2000, and thus, plaintiff's state law claims are barred by the statute of limitations. The court further notes that Missouri law indicates that the statute of limitations is not tolled pending exhaustion of administrative

5

remedies, but rather, the remedy provided by the legislature allows for an inmate to seek a stay of a timely filed lawsuit, not the tolling of the statute of limitations. *Cooper v. Minor*, 16 S.W.3d 578, 582 (Mo. en banc 2000). The Missouri Supreme Court held in *Cooper* that a stay of a timely filed suit, pursuant to the applicable statute of limitations, adequately protects an inmate against statute of limitations running prior to exhaustion of administrative remedies. *Id.* Plaintiff cannot avoid the consequences of the state statute of limitations and its lack of tolling for exhaustion of administrative remedies by subsequently filing a federal claim and tacking his state cause of action on to it.

Plaintiff's claims alleging a state cause for malicious prosecution are untimely filed and defendant's motion for summary judgment as to such claims should be granted. The court, therefore, finds it unnecessary to reach defendant's further arguments for dismissal of such state claims.

*Plaintiff's 42 U.S.C. § 1983 Claim*

Plaintiff claims that his due process rights, as guaranteed by the Fourteenth Amendment to the Constitution, to a fair trial were denied to him due to defendant's intentional or reckless failure to disclose or investigate known exculpatory leads or exonerating information, resulting in plaintiff being wrongly convicted and on death row for fourteen years, and the emotional distress and suffering related thereto.[1]

"Reckless or intentional failure to investigate other leads offends a defendant's due process rights." *Wilson v. Lawrence County*, 260 F.3d 946, 955 (8th Cir. 2001). *See also*

---

[1] In due process cases such as this, the injury will always be mental and emotional and without a showing of prior physical injury. This court has determined the Mason v. Schriro, 45 F. Supp. 2d 709, 715-20 (W.D. Mo. 1999), interpretation of 42 U.S.C. § 1997e persuasive. See March 31, 2004, Order, this case, doc. # 30. Title 42 U.S.C. § 1997e should not be held to bar suit by and recovery of damages by an inmate in the circumstances of this case for violations of his rights under the Fourteenth Amendment Due Process Clause. Id. Moreover, even if section 1997e bars compensatory damages, plaintiff has a claim for nominal damages. Id. at 720. See also Todd v. Graves, 217 F. Supp. 2d 958, 961 (S.D. Ia. 2002); Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002). Additionally, the court notes plaintiff has made a claim for punitive damages which are not limited by the restrictions of section 1997e. Todd, 217 F. Supp. 2d at 961; Thompson, 284 F.3d at 418.

*Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004) (recovery of damages available under section 1983 for intentional nondisclosure of materially favorable evidence by law enforcement which results in defendant being denied a fair trial) (citing *California v. Trombetta*, 467 U.S. 479, 488 (1984)).  However, "[n]egligent failure to investigate other leads or suspects does not violate due process," *Wilson,* 260 F.3d at 955, and does not provide a basis for recovery of damages under section 1983.  *See Villasana*, 368 F.3d at 980 (recovery of damages under section 1983 requires proof that law enforcement intended to deprive the defendant of a fair trial).

In the instant case, plaintiff has come forward with evidence that exculpatory information was forwarded to investigator Brooks, via an IOC from Captain Gross, and that such exculpatory information, once revealed to plaintiff, was sufficient to subsequently acquit plaintiff of the murder charges that defendant Brooks was charged with investigating. Although defendant Brooks, via his deposition testimony, denies receiving such IOC, the court finds that the IOC itself, which specifically states it is directed to defendant Brooks, is sufficient evidence from which a reasonable jury could infer that defendant Brooks received such IOC.  The court further finds that, based upon such inference, a reasonable jury could further determine that defendant Brooks' failure to investigate the exculpatory information set forth in the IOC, and his failure to forward the IOC to the prosecutor's office as part of the murder investigation file, was the result of reckless or deliberate intent and not that of mere negligence.  Additionally, the court notes that evidence of coercion is not required for a failure-to-investigate claim as asserted by defendant.  The *Wilson* decision held that officials' failure to investigate additional leads did not rise to the level of recklessness, absent evidence that the confession given by the plaintiff in the case was the result of coercion.  *Wilson*, 260 F.3d at 955.  In the instant case, although defendant investigator Brooks had evidence which indicated plaintiff to be a suspect in the murder; such evidence did not include a confession and was not so conclusive that a failure to make further investigation into eyewitness statements, as provided by the IOC, could not be determined by a reasonable jury to be reckless or deliberate.  Therefore, defendant's motion for summary judgment on plaintiff's section 1983 claims should be denied.

*Qualified Immunity*

The standard for qualified immunity is set forth by *Saucier v. Katz*, 533 U.S. 194 (2001). *Saucier* provides a two-part analysis to be use when determining whether a defendant is entitled to qualified immunity. The threshold question is "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" The next step is to ask whether the "right was clearly established . . . in light of the specific context of the case," at the time the incident occurred. The Court goes on to explain that "[t]he question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards."

As set forth above, it is clearly established by the Eighth Circuit today that reckless or intentional failure to disclose or investigate known exculpatory leads offends a plaintiff's due process rights. *Wilson*, 260 F.3d at 946. Thus, plaintiff's allegations, if true, are a violation of his constitutional rights, and the first part of the *Saucier* analysis is satisfied.

The murder investigation, which led to plaintiff's conviction, occurred in August 1985. Since *Brady v. Maryland*, 373 U.S. 83, 87 (1963), it has been recognized that an individual has a liberty interest in "obtaining fair criminal proceedings." *Wilson*, 260 F.3d at 956. *See Brady*, 373 U.S. at 83 (suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution). At the time of the murder investigation, *Brady* was the controlling rule of law. In *California v. Trombetta*, 467 U.S. 479 (1984), the Court applied *Brady* in the law enforcement context. Thus, at the time of the murder investigation, the law was clearly established that failure to disclose exculpatory evidence was a violation of due process and, thus, no reasonable investigator after *Brady* could reasonably believe that it was permissible to withhold the identity of exculpatory witnesses or fail to investigate them. A precedential case need not be on all fours to clearly establish a constitutional violation; it need only be sufficiently analogous to put a reasonable officer on notice that his conduct is unconstitutional. *Hill v. McKinley*, 311 F.3d 899, 904 (8th Cir. 2001). *Brady* was sufficiently established, at the time of the murder investigation, to put

defendant on notice that failing to disclose and/or investigate known exculpatory leads was unlawful.

Furthermore, although today, the standard for violation of due process requires reckless or intentional deprivation of a liberty interest in order for such deprivation to be violation of due process, *Daniels v. Williams*, 474 U.S. 307 (1986), at the time of the murder investigation, it was clearly established that even negligent deprivations of liberty were violation of Fourteenth Amendment due process. *Parratt v. Taylor*, 451 U.S. 527 (1981).

Therefore, in viewing the facts in the light most favorable to the plaintiff, the court finds that a reasonable investigator at the time of the murder investigation, in light of the pre-existing law, would be aware that failing to disclose or investigate exculpatory leads was wrong. Thus, the two-part analysis of *Saucier* is satisfied, and defendant is not entitled to qualified immunity.

*Conclusion*

For the reasons set forth above, this court finds that there is a dispute of material fact as to whether defendant's conduct was reckless or intentional failure to disclose or investigate exculpatory leads. Such factual dispute must be resolved by a jury. Defendant's motion for summary judgment is denied as to plaintiff's 42 U.S.C. § 1983 claims.

IT IS, THEREFORE, ORDERED that defendant's motion for summary judgment is granted, in part, and denied, in part [133]. It is further

ORDERED that defendant's motion for summary judgment is granted on plaintiff's state law malicious prosecution claims. It is further

ORDERED that defendant's motion for summary judgment is denied on plaintiff's 42 U.S.C. § 1983 claims.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: 11-17-05